File Name:  05a0280n.06

Filed:  April 13, 2005

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

No.  03-1061

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

ANTHONY JOSEPH ZERILLI,

     Defendant-Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

—————————————————————————/

Before:     KENNEDY, MARTIN and ROGERS, Circuit Judges.

BOYCE F. MARTIN, JR., Circuit Judge.  Anthony Zerilli appeals his conviction and sentence following a jury's determination of guilt as to various counts alleging violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962, and the Hobbs Act, 18 U.S.C. § 1951.  Although we **AFFIRM** Zerilli's conviction, we **VACATE** his sentence and **REMAND** for resentencing consistent with the Supreme Court's decision in *United States v. Booker*, __ U.S. __, 125 S. Ct. 738 (2005).

I.

On March 14, 1996, Zerilli and sixteen co-defendants were named in a twenty-five count indictment relating to the criminal activities of the Detroit branch of an organization known as "La Cosa Nostra" or, "the Outfit" or generally, "the Mafia."  The indictment alleged that La Cosa Nostra

is made up of "families" in various cities across the United States, including Detroit, Michigan.

These "families" allegedly engage in various criminal endeavors including illegal lotteries

("numbers"), extortion, bookmaking, loansharking, and acquiring and maintaining undisclosed

interests in gaming casinos. The indictment specifically alleged that Zerilli was a member of the

Detroit Cosa Nostra family and served in the role as a "Capo" or "Captain."

On January 27, 1998, trial commenced against Zerilli and five co-defendants.[1] Before

testimony began, however, Zerilli's case was severed from the trial for health reasons. On May 12,

1998, as a result of this Court's opinion in *United States v. Ovalle*, 136 F.3d 1092 (6th Cir. 1998)

(invalidating the method of impaneling grand juries), the indictment against Zerilli was dismissed

without prejudice. On January 6, 1999, Zerilli was named in a superseding indictment reiterating

many of the charges contained in the original indictment, and Zerilli was arraigned on January 25.[2]

On February 17, 1999, Zerilli filed a motion to sever his case from his co-defendants and

sought a continuance citing poor health and a scheduling conflict. On March 31, the district court

entered an order providing the United States with sixty days to complete an independent medical

examination of Zerilli. The district court set a trial date for July 11, 2000. On May 12, 2000, the

district court held a hearing on Zerilli's motion for a continuance and for severance, but took no

---

[1]The five co-defendants were Jack W. Tocco, Anthony J. Tocco, Nove Tocco, Anthony J. Corrado, and Paul Corrodo. The other co-defendants that were named in the original indictment were severed from these co-defendants as their charges did not involve allegations of racketeering activity.

[2]Some of the charges included in the original indictment were not included in the superceding indictment because they were barred by the applicable statute of limitations.

action at that time. On January 18, 2002, the court held another hearing on Zerilli's motion for a continuance. The court denied the motion on January 28, 2002.

Additional motions were made after this date, including a motion to dismiss filed on July 11 by Zerilli based upon a violation of the Speedy Trial Act, 18 U.S.C. § 3161, and a motion in limine to exclude the proposed expert testimony of Agent Joseph Finnigan of the Federal Bureau of Investigation. Zerilli's trial commenced on July 22, 2002. On this date, District Judge Lawrence Zatkoff replaced District Judge O'Meara who had become ill and could not preside over the trial. Additionally, on this date, District Judge Bernard Friedman presided over voir dire and the hearing on Zerilli's motion to dismiss the indictment pursuant to the Speedy Trial Act and orally dismissed the motion. On August 1, the district court denied Zerilli's motion in limine to exclude Agent Finnigan's testimony, and on August 2, the district court issued a written order indicating that it had heard Zerilli's motion to dismiss the indictment based upon an alleged violation of the Speedy Trial Act and that it had denied the motion.

The United States' case against Zerilli was admittedly circumstantial. The jury, however, returned a verdict of guilty with respect to seven of the eight counts contained in the indictment. Specifically, Zerilli was convicted on two counts of conspiracy in violation of the Racketeer Influenced and Corrupt Organizations Act (Counts One and Two); one count of conspiracy to interfere with commerce by extortion in violation of the Hobbs Act, 18 U.S.C. § 1951 (Count Three); and four counts of interference with commerce by extortion in violation of the Hobbs Act, 18 U.S.C. § 1951 (Counts Four, Five, Six, and Seven). Zerilli was acquitted on one count of interference with commerce by extortion in violation of the Hobbs Act, 18 U.S.C. § 1951 (Count

Eight). Zerilli was sentenced to five years, eleven months of imprisonment (seventy-one months),

a three-year term of supervised release, and a forfeiture of $243,300. This timely appeal followed.

II.

Zerilli first argues that the district court erred in refusing to dismiss the indictment against

him based upon a violation of the Speedy Trial Act, 18 U.S.C. § 3161. This Court reviews *de novo*

a district court's application of the Act, and reviews for clear error its factual findings supporting

its decision. *United States v. O'Dell*, 154 F.3d 358, 360 (6th Cir. 1998).

The Speedy Trial Act is aimed at protecting society's interest in timely criminal trials. Of

importance to this appeal is the seventy-day time limitation contained in section 3161(c)(1) of the

Act. Section 3161(c)(1) requires that a defendant's trial commence within seventy days of the later

of the date on which the defendant was indicted or the date on which the defendant first appeared

in court. In pertinent part, section 3161(c)(1) states:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged
> in an information or indictment with the commission of an offense shall commence
> within seventy days from the filing date (and making public) of the information or
> indictment, or from the date the defendant has appeared before a judicial officer of
> the court in which such charge is pending, whichever date last occurs.

18 U.S.C. § 3161(c)(1). From this seventy-day period, however, delays arising from certain pretrial

proceedings are excluded. *See* 18 U.S.C. § 3161(h)(1) - (9). For example, the Act provides that the

seventy-day clock is tolled for the period of time, not to exceed thirty days, for which the court has

taken a pretrial motion "under advisement." 18 U.S.C. § 3161(h)(1)(J). The Act also excludes

"delay resulting from any pretrial motion, from the filing of the motion through the conclusion of

the hearing on . . . such motion." 18 U.S.C. § 3161(h)(1)(F).

Both parties have argued at length over whether the period of time between the date on which the district court initially heard Zerilli's motion for a continuance, May 12, 2000, and the date on which it was denied, January 28, 2002, is excludable from the seventy-day, arraignment-to-trial time limit. We have undertaken a thorough review of the record in this case, and we conclude that no violation of the Speedy Trial Act occurred. In our view, the amount of time between Zerilli's motion for a continuance and the date on which it was denied is excludable under the Act. Under 18 U.S.C. 3161(h)(1)(F), any "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on . . . such motion" is excluded. In the present case, the district court initially heard Zerilli's motion for a continuance on May 12, 2000, yet that hearing was continued until January 18, 2002. Thus, under section 3161(h)(1)(F), this time period is excludable.[3] Because the hearing concluded on January 18, 2002, that is the date on which Zerilli's motion was taken "under advisement" under the Act. Thus, because the court ruled on the motion on January 28, 2002, within thirty days of the conclusion of the hearing on January 18, 2002, there was no violation of the Speedy Trial Act. *See* 18 U.S.C. § 3161(h)(1)(J).

### III.

Zerilli also argues that the evidence was insufficient to support a finding that the alleged extortion of local bookmakers had an effect on interstate commerce and, therefore, the United States did not meet its burden of proof under the Hobbs Act. Moreover, Zerilli argues that because the alleged racketeering activities were predicated on the extortion of local bookmakers among others,

---

[3]The Supreme Court has expressly held that the delays under section 3161(h)(1)(F) do not have to be "reasonably necessary" to be excluded from calculation under the Speedy Trial Act. *See Henderson v. United States*, 476 U.S. 321, 329-330 (1986).

there was also insufficient evidence of a connection to interstate commerce for purposes of the

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(d). This Court in reviewing

a claim for insufficiency of evidence must determine "whether, after viewing the evidence in the

light most favorable to the prosecution, *any* rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

For purposes of a conviction under the Hobbs Act, 18 U.S.C. § 1951, the United States must

prove a de minimis connection with interstate commerce. *United States v. Chance*, 306 F.3d 356,

374 (6th Cir. 2002). "An exception to the de minimis standard applies . . . where the alleged Hobbs

Act robbery or extortion is directed at an individual and not a business." *Id.* In the present case,

Zerilli argues that the extortion was directed only at individuals, not businesses, and thus, a

substantial effect on interstate commerce must be demonstrated. We are unpersuaded by this

argument. In our view, the United States successfully demonstrated that the extortion was directed

at businesses. The persons who were extorted were targeted because of their illegal gambling

businesses, that employed anywhere from 5-30 employees and grossed at certain points in time as

much as $120,000 per month. Furthermore, after an extensive review of the evidence, we are also

convinced that the United States provided evidence sufficient to establish a de minimis effect on

interstate commerce, and thus reject that claim on appeal.

IV.

Zerilli also argues that the district court erred in overruling his motion to bar the testimony

of Federal Bureau of Investigation Agent Joseph Finnigan. Finnigan testified, as an expert witness,

as to the organization, structure and rules of the Detroit Cosa Nostra family. Included in this

testimony were the names of individuals and what roles they played in the organized crime family. Although he appears to object to the testimony per se, Zerilli's main assignment of error is that the district court allowed Agent Finnigan to testify as to the roles that certain persons, including Zerilli, played in the crime family. This Court reviews for an abuse of discretion the admissibility of expert testimony. *United States v. Tarwater*, 308 F.3d 494, 512 (6th Cir. 2002). However, "[e]ven if the district court abuses its discretion in this regard, we will not reverse a conviction on that basis unless the 'substantial rights' of a party are affected." *United States v. Tocco*, 200 F.3d 401, 414 (6th Cir. 2000).

We are unpersuaded by Zerilli's arguments on this issue and can find no abuse of discretion in admitting the challenged testimony. Agent Finnigan's testimony was elicited to establish the existence of "an enterprise" under 18 U.S.C. § 1962(c). Finnigan was qualified to give this testimony, and the district court did not abuse its discretion in finding that the probative value of Finnegan's testimony was not outweighed by its prejudicial value. We are also unconvinced that the law of the case doctrine applies in this case. *See United States v. Thomas*, 167 F.3d 299, 306 (6th Cir. 1999). By its very terms, the law of the case doctrine does not apply to prohibit Judge Zatkoff from deciding the issue differently from Judge O'Meara. Thus, for the foregoing reasons, we conclude that the district court did not abuse its discretion in admitting the testimony of Agent Finnigan.

## V.

While this case was pending on appeal before this Court, the Supreme Court issued its decision in *United States v. Booker*. In *Booker*, the Supreme Court extended its Sixth Amendment

holding in *Blakely v. Washington*, __ U.S. __, 124 S. Ct. 2531, 2536-37 (2004), to the federal Sentencing Guidelines, holding that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by the plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Booker*, 125 S. Ct. at 756. In so holding, the Court expressly stated that its decision in *Booker* must be applied "to all cases on direct review." *Id*. Because this case was pending on direct review when *Booker* was decided, the holdings of *Booker* are applicable in the present case. In light of *Booker*, and the facts of this case, we are convinced that the proper course of action is to vacate Zerilli's sentence and remand for resentencing. *See United States v. McDaniel*, 398 F.3d 540, 547-51 (6th Cir. 2005); *United States v. Barnett*, 398 F.3d 516, 528-30 (6th Cir. 2005).

VI.

In sum, we **AFFIRM** Zerilli's conviction, but **VACATE** his sentence and **REMAND** for resentencing consistent with the Supreme Court's decision in *United States v. Booker*.